IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JARVIS LYLES,                          *

    Plaintiff,                     *

vs.                                    *

                                     CASE NO. 4:10-CV-53 (CDL)

BURT'S  BUTCHER  SHOPPE  and *
EATERY INC., and BURTON STACEY,
JR.,                                   *

    Defendants.                    *

_____

O R D E R

    This is a wage and hour case brought by Jarvis Lyles against his former employer, Burt's Butcher Shoppe and Eatery, Inc., (hereinafter "Burt's Butcher Shoppe") and Burton Stacey, Jr., (hereinafter "Mr. Stacey").  The Complaint was filed on May 14, 2010. Compl., ECF No. 1.  Plaintiff sought to recover back overtime pay, liquidated damages, and his costs of litigation, including his reasonable attorney's fees.  Defendants filed their Answers on June 15, 2010. Defs.' Answers, ECF Nos. 4 & 5. After discovery, the Court called the matter for trial. Plaintiff waived his demand for a jury trial, and the matter was set for a bench trial that was held on September 13, 2011.

    After considering the evidence presented at trial, the Court finds in favor of Plaintiff.  Preliminarily, the Court observes that genuine and material factual disputes existed

after the presentation of Plaintiff's case and at the conclusion of all of the evidence.  Therefore, neither party was entitled to judgment as a matter of law, and Defendants' motion for judgment as a matter of law is denied.  The Court makes the following findings of fact and conclusions of law.

FINDINGS OF FACT

## I.  STIPULATED FACTS

The parties stipulated to the following facts.  Pretrial Order Ex. A, Material Undisputed Facts, ECF No. 22 at 10-11.

1. Burt's Butcher Shoppe is a corporation organized under the laws of the State of Georgia.

2. Burton Stacey, Jr. is the sole shareholder and President of Burt's Butcher Shoppe.

3. From 2007 through 2010, Burt's Butcher Shoppe, had two or more employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined by 29 U.S.C. § 203(s)(1)(A)(i).

4. During the time Plaintiff was actively employed at Burt's Butcher Shoppe, Plaintiff was an employee of Burt's Butcher Shoppe, within the meaning of 29 U.S.C. § 203(e).

5. During the time Plaintiff was actively employed at Burt's Butcher Shoppe, Burt's Butcher Shoppe was the employer of Plaintiff within the meaning of 29 U.S.C. § 203(e).

6. Defendants never sought or obtained any written or verbal opinion from the United States Department of Labor or the Georgia Department of Labor as to how Plaintiff or someone who performs the same business function as Plaintiff should be compensated to comply with the Fair Labor Standards Act ("FLSA" or "the Act").

7. Defendants never sought or obtained any opinions, including but not limited to legal advice, as to how Plaintiff or someone who performs the same business function as Plaintiff should be compensated to comply with the FLSA.

8. Plaintiff was employed as a cook and stocker by Defendant Burt's Butcher Shoppe at 2932 Warm Springs Road in Columbus, Muscogee County, Georgia from approximately June 12, 2005 until February 6, 2010.

9. The operation of Defendant Burt's Butcher Shoppe was controlled by Burton Stacey, Jr.

10.   At all times material to this action, Defendant Burton Stacey, Jr. acted directly or indirectly for Defendant Burt's Butcher Shoppe in relation to Plaintiff.

11.   From May 14, 2007 Defendants paid Plaintiff $7.50 per hour worked and paid the Plaintiff's share of the 7.65% FICA contribution that Plaintiff would otherwise be required to pay.

## II.  Findings of Fact

At trial, the Court heard testimony and received evidence from Plaintiff Jarvis Lyles; Rayfield Mickles, a former employee of Defendant Burt's Butcher Shoppe; Charles R. Bridgers, one of Plaintiff's counsel; Defendant Burton Stacey, Jr.; and Burton Stacey, III, a former manager of Burt's Butcher Shoppe.  After considering the evidence presented, the Court finds that the following facts have been proven by a preponderance of the evidence:

1. Plaintiff was employed by Burt's Butcher Shoppe during the following relevant time periods:

   a. May 14, 2007 through April 19, 2008, and

   b. December 20, 2008 through February 6, 2010.

2. Burt's Butcher Shoppe is divided into two separate divisions on the same property.  There is a butcher shop and a restaurant.

3. The restaurant is open to customers from 11:00 am until 7:00 pm.

4. The restaurant was closed on Thanksgiving, the day after Thanksgiving, Christmas, New Year's Day and July 4.

5. The restaurant is open five days each week (Tuesday through Saturday), unless one of the above holidays falls between Tuesday and Saturday.  If that occurs, the restaurant may be open on a Sunday or Monday adjoining that work week.

6. Defendants recorded a portion of Plaintiff's work time using a time clock that Plaintiff punched in and out on.

7. The work time that was recorded on the time clock was known to the parties as "Clock Time."

8. Defendants conceded that "Clock Time" records did not portray an accurate record of all the hours worked by Plaintiff.

9. To evade the FLSA's overtime requirements, Defendants required Plaintiff to work off the clock, thereby preventing his Clock Time exceeding forty hours in any workweek.

10. Time worked off the clock was known by the parties as "Paper Time."

11. The term Paper Time derived from the fact that time worked off the clock was recorded each week by Kitchen Manager Odell Boykins on waitress order sheets.

12. Defendants routinely instructed Plaintiff to clock in and out so as to not exceed forty hours of Clock Time in a workweek.

13. In 2007, for example, Plaintiff routinely reported to work and began work at 9:30 each morning.

14. Plaintiff and the other kitchen workers would work off the clock, on Paper Time, for the first three to three and one half hours.

5

15.     Between 12:00 pm and 1:00 pm, Boykins regularly instructed Rayfield Mickles to clock in all of the hourly employees.

16.     The employees who Mr. Mickles clocked in had already been working a number of hours, on Paper Time.

17.     At other times, Defendants required that Plaintiff clock out after working two hours on a Saturday morning, thereby limiting his Clock time to under 40 hours, and to continue working off the clock on Paper Time.

18.     At other times, Defendants would require that Plaintiff not clock in at all on certain days, and work the entire day on Paper Time.

19.     It was the policy and practice of Defendants to instruct the employees of Burt's Butcher Shoppe to manipulate their Clock Time so as to not exceed forty hours of recorded time in a workweek.

20.     It was the policy and practice of Defendants to instruct the employees of Burt's Butcher Shoppe to record hours worked as Paper Time.

21.     Plaintiff was paid for his Clock Time by check.

22.     Plaintiff was paid for his Paper Time in cash.

23.     Defendants did not maintain all records reflecting the Paper Time worked by Plaintiff.

24.    Defendants failed to retain records of the hours that Plaintiff was scheduled to work.

25.    Defendants admit and the Court finds that the record of hours on Defendant's time cards (Clock Time) is not accurate.

26.    The records of the employer do not provide a basis to determine the number of hours Plaintiff worked in any workweek.

27.    The amount Defendant paid Plaintiff by check depended on the hours Plaintiff worked on Clock Time, and because the Plaintiff's Clock Time did not accurately reflect the number of hours Plaintiff worked, his paychecks do not provide an adequate basis to determine the number of hours he worked in any workweek.

28.    Paper Time frequently began well before the 40-hour overtime threshold was reached.

29.    Plaintiff might have less than forty hours of Clock Time in a week and all the rest of the time as Paper Time.

30.    Defendant admitted that it owed the Plaintiff some back overtime, but Defendant failed to present with reasonable certainty any evidence as to how many overtime hours Plaintiff worked.  Defendant's evidence on this issue was speculation.

31.   The only evidence of Plaintiff's complete work time was the Plaintiff's testimony and the testimony of Rayfield Mickles.

32.   Based on this evidence, the Court find that the Plaintiff worked from 9:30 a.m. to 8:30 p.m. most work days.

33.    Plaintiff took a non-compensable meal break on some work days.

34.   Plaintiff was required to clock in and out before each meal break.

35.   The only evidence of the actual meal breaks taken by Plaintiff are the Clock Time records submitted by Defendants.

36.   The Clock Time records are accurate with respect to the meal breaks that Plaintiff took.

37.   Plaintiff was paid in cash at the rate of $7.50 per hour for all Paper Time, regardless of whether the Paper Time reflected overtime hours.

38.   Prior to July of 2009, Defendants failed to pay Plaintiff at time and one half the regular rate for any overtime recorded as Clock Time.

39.   Defendants never paid Plaintiff at time and one half times the regular rate for any overtime recorded as Paper Time.

40.    Defendants instituted a new work time recording system in July of 2009.

41.    Defendants' accountant began writing payroll checks in July of 2009.

42.    After July of 2009, Plaintiff was paid at time and one half the regular rate for any overtime recorded as Clock Time.

43.    After July of 2009, Defendants continued to pay Plaintiff in cash for Paper Time.

44.    Based on the testimony of Plaintiff and Mr. Mickles, the Plaintiff worked 1,368.1 hours of overtime in the three years preceding the filing of the Complaint, for which he did not receive the overtime premium of time and one half.

45.    Defendants paid Plaintiff $7.50 per hour worked and paid the Plaintiff's share of the 7.65% FICA contribution that Plaintiff would otherwise be required to pay.

46.    Plaintiff's regular rate as defined by the FLSA was, therefore, the sum of $7.50 and the value of the FICA contribution paid on Plaintiff's behalf: $8.07 per hour.

47.    The overtime premium that was due the Plaintiff was the difference between one and one half times $8.07 ($12.11) and the $7.50 in cash that he was paid: $4.61.[1]

---

[1]   This number is slightly lower than the overtime premium of $4.67 presented by Plaintiffs at trial.    After the bench trial was

48.    The value of 1,368.1 hours of unpaid overtime at an overtime premium of $4.61 is $6,306.94.

49.    At all times relevant to this matter, Mr. Stacey was aware that the Fair Labor Standards Act required that Plaintiff be paid at one and one half times the regular rate for work in excess of forty hours in any work week.

50.    At all times relevant to this matter, Mr. Stacey acted on behalf of Burt's Butcher Shoppe as to Plaintiff's compensation.

51.    At all times relevant to this matter, Mr. Stacey had operational control over Burt's Butcher Shoppe including the ability to hire, fire, discipline and control its employees.

52.    At all relevant times, Mr. Stacey willfully failed to pay Plaintiff overtime compensation as required by the FLSA.

53.    Plaintiff has submitted a detailed accounting of his attorneys' fees and costs of litigation that provides the following information: The date, the timekeeper, the time recorded and the activity.

54.    Plaintiff has incurred $49,571.78 in attorney's fees. This amount includes the time detailed in Plaintiff's Trial

---

concluded, Plaintiff's counsel advised that their initial calculation was in error, and that the actual overtime premium was $4.61.  The calculations in this Order use an overtime premium of $4.61.

Exhibit 7 of $34,421.78 for pretrial preparation.  The fees in Plaintiff's Exhibit 7 totaled $35,972.60, but that total improperly included the costs for the filing fee ($350), court reporter fees ($1,114.70) and witness fees ($86.12) as attorney time.  The Court has subtracted these costs from the amount of attorney time claimed in Plaintiff's Exhibit 7 to reach the $34,421.78 figure.  The $49,571.78 also includes $15,150.00 for time incurred immediately before, during, and after trial.  Plaintiff's attorneys spent an additional 12.0 hours for Mr. Bridgers and Mr. Fitzpatrick the day before trial ($7,200); an additional 8.0 hours for Mr. Bridgers and Mr. Fitzpatrick for the day of trial (including preparation and travel) ($4,800); and an additional 7.5 hours ($2,250.00) for Mr. Bridgers and 3.0 hours for Mr. Fitzpatrick ($900) to draft a proposed order as required by the Court.  Bridgers Decl., ECF No. 32.

55.    Plaintiff's counsel has charged this file as follows: $300 per hour for Mr. Bridgers and Mr. Fitzpatrick; $85 per hour for Ms. Sorrenti, their paralegal; and $45 per hour for Ms. Toenes, their legal assistant.

56.    These rates have been approved in at least five different Title VII and FLSA cases in the Northern District of Georgia.

57.    Plaintiff has incurred $1,750.82 in costs for a filing fee ($350); service fee ($200); court reporter fees ($1,114.70); and witness fees ($86.12).    Plaintiff's witness fees include the fee for Charles Cochran, who did not testify and Plaintiff did not disclose him as a potential witness until shortly before trial.    The Court did not amend the pretrial order to include him as a potential witness.

DISCUSSION

## I.    The Fair Labor Standards Act

The Fair Labor Standards Act provides:

> No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) & (2)(C).

Neither an employee nor an employer can effectively waive or contractually abridge any of the provisions of the Fair Labor Standards Act.   *Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 432 (11th Cir. 1994); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

## II.   Jurisdiction Under the Act

As set out above, the Parties stipulate that Burt's Butcher Shoppe is subject to the FLSA. The Parties stipulate that during the time Plaintiff was actively working, he was an "employee" within the meaning of the Act and that Burt's Butcher Shoppe was an "employer" within the meaning of the Act.  Plaintiff was not exempt from payment of an overtime premium pursuant to the FLSA.[2]

## III. FLSA Statute of Limitations

29 U.S.C. § 255(a) of the FLSA provides that actions are to be brought within 2 years after the cause of action "accrued" except that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).[3]  In a recent case, *Morgan v. Family Dollar Stores*, *Inc.*, 551 F.3d 1233, 1283 (11th Cir. 2008), the Eleventh Circuit stated that "'[t]o establish that the violation of the [FLSA] was willful in order to extend the limitations period, the employee must prove by a preponderance

---

[2] While the Parties did not formally stipulate that Plaintiff was non-exempt, Defendants have not pled an FLSA exemption and have presented no evidence or argument that Plaintiff was exempt.  The Court finds that Plaintiff was not exempt from the overtime requirements of the FLSA. *See Abel v. S. Shuttle Servs., Inc.,* 631 F.3d 1210, 1212 (11th Cir. 2011) (per curiam) ("The employer has the burden to show that an exemption applies").

[3] "In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citing ROGET'S INTERNATIONAL THESAURUS § 622.7, at 479; § 653.9, at 501 (4th ed. 1977)).

of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was.'" *Morgan*, 551 F.3d at 1280 (second alternation in original) (quoting *Alvarez Perez v. Sanford-Orlando Kennel Club*, Inc., 515 F.3d 1150, 1162-1163 (11th Cir. 2008)) (internal quotation marks omitted).  Reckless disregard is defined as the "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]."  *Id.* (alteration in original) (quoting 5 C.F.R. § 551.104).

Defendants were aware of their obligations under the Act to pay an overtime premium.  Defendants stipulated that they made no efforts to obtain guidance from the federal or state departments of labor as to the proper way to pay Plaintiff.  The Court finds that the purpose of Defendants' dual record keeping system (i.e., Clock Time and Paper Time) was to avoid its obligation under the Act to pay overtime.  This multi-year scheme to avoid paying overtime establishes the willfulness of Defendants' actions.  The applicable statute of limitations is, therefore, three years.  Because Plaintiff filed his Complaint on May 14, 2010, ECF No. 1, Plaintiff may recover unpaid overtime under the FLSA from May 14, 2007 until the end of his employment on February 6, 2010.

IV.  **Regular Hourly Rate and Overtime Premium Calculation**

Overtime pay premium is one and one half times the employee's "regular rate." 29 U.S.C. § 207 (a)(1).  The "regular rate" is the hourly rate paid to an employee for the normal non-overtime work period.  Unless specifically excluded, the regular rate includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e).  Based on the testimony received at trial, the Court finds that Plaintiff's "regular" hourly rate was $8.07, which consisted of the $7.50 rate paid to him and an additional fifty-seven cents ($0.57) per hour that represents the employee's portion of FICA paid on behalf of Plaintiff by the Defendants.  His overtime premium was, therefore, $12.11. Plaintiff was paid his straight time rate ($7.50 per hour) for all Paper Time hours worked.  This results in an underpayment of $4.61 for each hour of work in excess of forty hours in any workweek.

V.  **Hours Worked and Regular Rate**

To prevail on a FLSA overtime claim, an employee must prove that he was "suffered or permitted to work [overtime] without compensation." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007).  "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work

as a matter of just and reasonable inference." *Id.* at 1316 (internal quotation marks omitted).  "The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

29 U.S.C. § 211(c) requires employers to "make, keep and preserve records" of employees and of their "wages, hours, and other conditions and practices of employment" in accordance with regulations adopted by the Department of Labor's Wage and Hour Division. 29 U.S.C. § 211(c).  Pursuant to the record keeping regulations set out in 29 C.F.R. § 516.2, employers must maintain work time, schedule and pay records for their employees.  As to those employees subject to minimum wage and overtime, payroll records must be kept that includes the hours worked each day and week. 29 C.F.R. § 516.2(a)(7).  Records for non-exempt employees must be preserved for at least three years. 29 C.F.R. § 516.5(a).  Defendants failed to maintain its records in the manner required by 29 U.S.C. § 211(c), 29 C.F.R. § 516.2, and 29 C.F.R. § 516.5.

An employer's failure to create and maintain legally required records has a legal consequence.  "'If the employer fails to produce such evidence, [which is the case here], the court may then award damages to the employee, even though the

result be only approximate.'" *Donovan v. New Floridian Hotel,
Inc.*, 676 F.2d 468, 471 (11th Cir. 1982) (quoting *Anderson v.
Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)).

A summary of Plaintiff's uncompensated overtime was
introduced at trial as Plaintiff's Exhibit 10.   Mr. Lyles
testified that he prepared the summary with his attorneys.   He
also testified that this summary took into account the actual
break time recorded on his available time cards.   The summary
also took into account his normal working days and hours, the
restaurant's holidays and his break in service.   Based on Mr.
Lyles's estimates, the hours of uncompensated overtime total
1,368.1.

As set out above, the Defendants have admitted that their
time records are not accurate.   It is impossible to determine
with specificity how many hours Plaintiff worked.   The Court
finds that Plaintiff' estimate of his hours is a reasonable
approximation and meets the standard set out in *Anderson* and
*Donovan*.

As set out above, the Court has found that Plaintiff is due
an additional $4.61 for each hour of uncompensated overtime for
a total due to the Plaintiff of $6,306.94.

**VI.  Liquidated Damages**

Plaintiff contends that he is entitled to liquidated
damages in an amount equal to the unpaid overtime.   "Any

employer who violates the provisions of section 206 or section 207 of this title *shall* be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b) (emphasis added).  Section § 260 provides that:

> In any action . . . to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938 . . ., if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1983 . . ., the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

"[L]iquidated damages are mandatory absent a showing of good faith."  *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987).  "[T]he district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith."  *Id.*  The employer establishes good faith "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act."  *Alvarez Perez*, 515

F.3d at 1163; *accord* 29 C.F.R. § 790.22.  "The employer bears the burden of establishing both the subjective and objective components of that good faith defense against liquidated damages." *Alvarez Perez*, 515 F.3d at 1163.

Defendants knew of their obligations under the Act and went to great lengths to avoid them.  Their conduct was willful, and for these reasons, the Court finds that Defendants have not met their burden of proving that their failure to comply with the FLSA was done in good faith.  Mr. Lyles proved damages under the FLSA in the amount of $6,306.94.  The Court finds that an additional 6,306.94 in liquidated damages is required and hereby awards this sum to the Plaintiff.

## VII. Individual Liability of Burton Stacey, Jr.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The Supreme Court has emphasized the "expansiveness" of the FLSA's definition of employer.  *Falk v. Brennan*, 414 U.S. 190, 195 (1973).  "Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal quotation marks omitted).

"The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991). The Eleventh Circuit has stated, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986) (internal quotation marks omitted). Corporate officers have "operational control" when they are "involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Alvarez Perez,* 515 F.3d at 1160 (internal quotation marks omitted). Even occasional participation by a defendant can be sufficient for "employer" status if the totality of the circumstances demonstrate that the defendant was in charge of day-to-day operations and exercised direct supervision over the employee. *See Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x 839, 845-46 (11th Cir. 2009) (per curiam) (finding that reasonable person could conclude that wife was employer because she was involved in day-to-day operations and exercised direct supervision over employees, particularly when her husband was out of town).

Mr. Stacey is the sole shareholder and President of Burt's Butcher Shoppe. At all times relevant to this case, Mr. Stacey had operational control over Burt's Butcher Shoppe, including the ability to hire, fire, discipline and control its employees. At all times relevant to this case, Mr. Stacey acted on behalf of Burt's Butcher Shoppe as to Plaintiff's compensation. At all times relevant to this case, Mr. Stacey made the decision to not pay Plaintiff at time and one half his regular rate for time worked in excess of forty hours. Mr. Stacey was aware that the FLSA required that Plaintiff be paid an overtime premium. Mr. Stacey actively engaged in a scheme to circumvent the FLSA by keeping two separate methods of recording work time. For these reasons, the Court finds that Mr. Stacey was an "employer" of Plaintiff as defined in 29 U.S.C. § 203(d), and therefore is individually liable for Plaintiff's damages.

## VIII.    Plaintiff's Attorney's Fees and Costs

29 U.S.C. § 216(b) of the FLSA provides that in any action successfully brought under its provisions, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In the Eleventh Circuit, an award of attorney's fees is mandatory for prevailing plaintiffs under the FLSA. *See Dionne v. Floormasters Enters., Inc.*, 647 F.3d 1109, 1115 (11th Cir. 2011); *Kreager v. Solomon &*

*Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985) (citing 29 U.S.C. § 216(b)).

Additionally, "'[a] request for attorney's fees should not result in a second major litigation.'" *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (alteration in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). It is "perfectly proper to award attorney's fees based solely on affidavits in the record." *Id.* at 1303. "The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses." *Id.* (internal quotation marks omitted).

The first inquiry in setting the amount of attorneys' fees recoverable is to determine a lodestar. Hours "reasonably expended" multiplied by "a reasonable hourly rate" determines the lodestar. *Id.* at 1302. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."[4] *Id.* at 1299. The burden is on

---

[4] Staff time is also compensable. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). "While it is true that time for secretaries, office managers, and other administrative personnel is deemed to be subsumed into an attorney's market rate, the same is not true for paralegals, law clerks, and other legal assistants to the extent they perform work traditionally performed by an attorney." *Webster Greenthumb Co. v. Fulton County, Ga.*, 112 F. Supp. 2d 1339, 1366 (N.D. Ga. 2000)

Plaintiffs to show that the rate is reasonable. *Id.* The rates charged by Plaintiff's counsel and their staff are reasonable given their experience, qualifications and willingness to pursue claims under the FLSA on a fee shifting basis. Plaintiff's counsel divided the work between themselves and there was little overlap in their efforts. The Court further finds that the requested award of attorney's fees and costs in this case is reasonable and supported by the record. Therefore, the lodestar is $49,571.78.

The general rule is that where "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.*

---

(Thrash, J.) (citing *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988)).

Defendants have presented no credible evidence to suggest that Plaintiff's counsel did not spend the time on this matter for which they seek a recovery of attorney's fees; nor have Defendants presented any evidence that the amount of time spent on this matter was unreasonable. Defendants maintain, however, that Plaintiff's claim for attorneys' fees should be reduced because Plaintiff initially sought more damages in his Complaint than were proven at trial. The Supreme Court has provided guidance as to when such a reduction is warranted. In *Hensley,* the Supreme Court held that:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* at 440.

Plaintiff's result falls into the general rule that a reasonable attorney's fee should not be reduced. Plaintiff prevailed on all counts. He successfully proved he was entitled to overtime, that the Defendants' failure to comply with the FLSA overtime requirement was willful, that the individual Defendant was liable, and that liquidated damages were

appropriate.   The Court finds that Plaintiff obtained excellent
results   and   a   reduction   in   the   fees   is   not   warranted.[5]
Accordingly, Plaintiff is awarded attorney's fees in the amount
of $49,571.78.

The   Court   finds   that   Plaintiff   is   entitled   to   litigation
costs associated with pursuing the FLSA claims.   *See* 29 U.S.C. §
216(b).   The costs claimed are allowed by the FLSA and 28 U.S.C.
§ 1920.   *See Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575
(11th Cir. 1988) (finding the costs recoverable by prevailing
plaintiffs in FLSA cases under § 216(b) are limited to those
costs   enumerated   in   28   U.S.C.   §   1920).[6]   The   Court   finds,

---

[5] Plaintiff estimated in the pretrial order that Defendants owed him
$6,085.20 in overtime.   Pretrial Order 6, ECF No. 22.   This figure is
less than the amount originally claimed in the Complaint.   Plaintiff
sought a reduced amount of damages at trial because Plaintiff admitted
during discovery that he quit working for Defendants for a period of
time, a fact not previously disclosed to Plaintiff's counsel.   The
amount of damages estimated in the pretrial order, however, is less
than the amount Plaintiff proved at trial ($6,306.94).   The Court also
notes that Plaintiff's inability to nail down exactly the amount of
his unpaid overtime compensation was attributable in part to the fact
that Defendants failed to maintain payroll records as required by the
FLSA.   The Court finds that under these circumstances, a reduction in
fees based on the amount of damages awarded, compared to the amount
alleged in the Complaint, is not warranted.

[6] 28 U.S.C. § 1920 provides:

A judge or clerk of any court of the United States may tax as costs
the following:

(1) Fees of the clerk and marshal;

(2)   Fees   for   printed   or   electronically   recorded   transcripts
necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

however, that Plaintiff is not entitled to recover his witness fee for Charles Cochran because Cochran did not testify, was not disclosed until shortly before trial and was not included in the pretrial order.   Thus, the Court will subtract $43.06 from Plaintiff's costs for the Cochran witness fee.  Accordingly, the Court awards Plaintiff $1,707.76 in costs.

CONCLUSION

For the foregoing reasons, Defendants' motion for judgment as a matter of law is denied. Plaintiff Jarvis Lyles is awarded $6,306.94 for unpaid overtime compensation, $6,306.94 for liquidated damages, and $51,279.54 for costs and attorney's fees.

The Clerk shall enter a Judgment accordingly in favor of Plaintiff and against Defendants, jointly and severally, in the total amount of $63,893.42.

All other pending motions shall be terminated as moot.

IT IS SO ORDERED, this 17th day of October, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.